USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/6/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ONEWEST BANK, N.A.,

                Plaintiff,

-against-

VERONICA GUERRERO, LUIS R. GUERRERO,
JPMORGAN CHASE BANK N.A., ANGELA M.
CONDE, and JOHN DOE,

                Defendants.

No. 14-cv-3754 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiff OneWest Bank, N.A., commenced this action against Defendants Veronica Guerrero, Luis Guerrero, JP Morgan Chase Bank, N.A., Angela M. Conde, and John Doe to foreclose on a residential mortgage. Presently before the Court is Plaintiff's Motion for Summary Judgment and Defendants' Cross-Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF Nos. 76 & 84.) For the following reasons, Plaintiff's Motion for Summary Judgment is GRANTED and Defendants' Cross-Motion is DENIED.

## BACKGROUND

This case arises from Plaintiff's[1] attempt to foreclose on a mortgage. Although previously expressed at length, *OneWest Bank, N.A. v. Guerrero*, No. 14-CV-3754 (NSR), 2016 WL

---

[1] Plaintiff informs the Court that because CIT Group Inc., completed the acquisition of IMB Holdco LLC—the parent company of OneWest Bank, N.A.—the Plaintiff is now known as "CIT Bank, N.A." (Mem. of Law in Supp. of Pl. Mot. for Summ. J. 2, 14, ECF No. 78; Notice of Plaintiff's Name Change, ECF No. 44.) For purposes of this motion, the Court will refer to Plaintiff by its original name.

1

3453457, at *1–2 (S.D.N.Y. June 17, 2016), the Court briefly reiterates the relevant facts for purposes of this motion.[2]

On July 27, 2007, Defendant Veronica Guerrero executed a consolidated Note, promising to pay IndyMac Bank, F.S.B., the principal sum of $825,000 plus interest on the property located at 202 Hickory Grove Drive East, Larchmont, New York. (Pl. Statement of Material Facts ("Pl. 56.1") ¶ 4, ECF No. 79; Def. Counter-Statement of Material Facts ("Def. 56.1") ¶ 4, ECF No. 87.) On the same day, Defendants Veronica Guerrero and Luis R. Guerrero ("Defendants") executed a Consolidation, Extension and Modification Agreement which included a Consolidated Mortgage on the Property. (Pl. 56.1 ¶ 5; Def. 56.1 ¶ 5.) Defendants Veronica Guerrero and Luis R. Guerrero are the owners of the property subject to this suit. (Pl. 56.1 ¶¶ 2–3; Def. 56.1 2–3.)

Plaintiff alleges to be the owner and holder of the Note and Mortgage subject to this foreclosure action. (Pl. 56.1 ¶ 1; Def. 56.1 ¶ 1.) Plaintiff posits that Mortgage Electronic Registration Systems, Inc., as nominee for IndyMac F.S.B., assigned the Consolidation Agreement to Plaintiff on July 1, 2008, and that it was memorialized for the public record in an assignment of mortgage executed on March 1, 2011, and recorded with the Westchester County Clerk on March 28, 2011. (Pl. 56.1 ¶ 6.) Defendants dispute whether the original assignment took place on July 1, 2008. (Def. 56.1 ¶ 6.) Plaintiff alternatively posits, and Defendants dispute, that the Consolidation Agreement, including the subject Note and Mortgage, was physically

---

[2] The Court notes that the parties have failed to conform to the mandates of Rule 56.1. The parties do not cite to evidence in the record to support the vast majority of their statements. *See Lopez v. Echebia*, 693 F. Supp. 2d 381, 386 (S.D.N.Y. 2010) ("Rule 56.1 of the Local Civil Rules ('Local Rule 56.1') 'requires a party moving for summary judgment to submit a statement of the allegedly undisputed facts on which the moving party relies, together with citation to the admissible evidence of record supporting each such fact'") (citing *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003). Nevertheless, given that the parties either admit or contest the statements of facts, which are then discussed with evidentiary support in their moving papers, the Court takes the following facts from their 56.1 statements.

transferred to Plaintiff prior to the commencement of this action with the proper indorsement. (Pl. 56.1 ¶ 7; Def. 56.1 ¶ 7.)

The parties do agree that Defendants defaulted under the terms of the Note and Mortgage by failing to make the payment due on August 1, 2010, and all payments due thereafter. (Pl. 56.1 ¶ 8; Def. 56.1 ¶ 8.) Following the default, Plaintiff elected to call due the entire unpaid principal balance together with interest and disbursements, including reasonable attorney fees and costs, allowable under the terms of the Note and Mortgage. (Pl. 56.1 ¶ 12.)[3] The Defendants remained in default as of the filing of the instant motions. (Pl. 56.1 ¶ 13; Def. 56.1 ¶ 13.)

The parties dispute whether Plaintiff followed the contracted and statutory procedures concerning the Notices of Default. First, Plaintiff maintains that, in accordance with the terms of the Mortgage, they sent a Notice of Default ("Notice"), dated May 25, 2012, to Defendants via first-class mail to the subject property's address. (Pl. 56.1 ¶ 11.) Defendants, however, dispute that Plaintiff complied with the terms of the Mortgage and deny receipt of the Notice. (Def. 56.1 ¶ 11.) The parties also dispute whether Plaintiff complied with New York State Real Property Actions and Proceedings Law ("RPAPL") § 1304, when Plaintiff purportedly sent Defendants a 90-day pre-foreclosure notice on October 29, 2013 via first-class and certified mail. (Pl. 56.1 ¶ 9; Def. 56.1 ¶ 9.)[4]

## STANDARD ON A MOTION FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact

---

[3] Defendants do not dispute that Plaintiff elected to call due the unpaid principal, but rather, dispute the propriety of such acceleration. (Def. 56.1 ¶ 12.)
[4] Plaintiff notes that within three business days of allegedly mailing the Notice to Defendants, they also electronically filed the Notice with the Superintendent of Financial Services on October 30, 2013 as required by RPAPL § 1306(2). (Pl. 56.1 ¶ 10; Def 56.1 ¶ 10.) Although Defendants note that it "appears from the Proof of Filing that RPAPL §1306(2) was complied with," they maintain that such compliance does not necessarily mean that the 90-Day Notices were sent in accordance with the RPAPL § 1304. (Def. 56.1 ¶ 10.)

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, "including depositions, documents [and] affidavits or declarations," *id.* at 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may also support an assertion that there is no genuine dispute by "showing . . . that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden, the onus shifts to the nonmoving party to identify "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations and citation omitted). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *accord Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013) (summ. order). Courts must "constru[e] the evidence in the light most favorable to the non-moving party and draw[ ] all reasonable inferences in its favor." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (quotations and citation omitted). In reviewing the record, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," nor is it to determine a witness's credibility. *Anderson*, 477 U.S. at 249. Rather, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Id.* at 250.

Summary judgment should be granted when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The party asserting that a fact is genuinely disputed must support their assertion by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence . . . of a genuine

4

dispute." Fed. R. Civ. P. 56(c)(1). "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999). The nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation." *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quotations and citations omitted).

## DISCUSSION

Plaintiff seeks summary judgment on this foreclosure action and to dismiss the affirmative defenses set forth in Defendants' Answer. Additionally, Plaintiff also seeks to amend the case caption to reflect Plaintiff's new name, seeks to dismiss the action against Defendant "John Doe" without prejudice, and seeks Default Judgment against Defendants JP Morgan Chase Bank, N.A., and Angela M. Conde. (Mem. of Law in Supp. of Pl. Mot. for Summ. J. ("Pl. Mot.") 1, ECF No. 78.) Defendants likewise seek summary judgment, and argue that Plaintiff cannot establish that it has standing to foreclose or that it complied with the Mortgage's notice provision. (Def. Mem. of Law in Opp. to Pl. Mot. for Summ. J. and in Supp. of Def. Cross-Mot. for Summ. J. ("Def. Mot.") 6, ECF No. 85.)

### I. Prima Facie Case

"'In a New York mortgage foreclosure action, a plaintiff makes a prima facie case—with summary judgment appropriate if nothing else is shown—where the foreclosing party produces documentary evidence establishing the three elements of a foreclosure claim: (1) a mortgage, (2) a note, and (3) proof of default on the note by the mortgagor.'" *Wells Fargo Bank, N.A. v. Ullah*, No. 13-cv-485 (JPO), 2015 WL 3735230, at *4 (S.D.N.Y. June 15, 2015), *appeal dismissed* (Sept. 3, 2015) (quoting *E. Sav. Bank, FSB v. Bright*, No. 11-cv-1721 (ENV) (MDG), 2012 WL 2674668, at *3 (E.D.N.Y. July 5, 2012) ("*E. Sav. Bank I*"). "Once the plaintiff has established its

5

prima facie case by presenting the Note, Mortgage and proof of default, the Mortgagee has a presumptive right to foreclose which can only be overcome by an affirmative showing by the Mortgager." *Ullah*, 2015 WL 3735230, at *4 (quotations omitted). "The burden of providing affirmative evidence of a defense generally rests with the defendant, but if the defendant raises the plaintiff's standing as a defense, the plaintiff must establish it before the burden shifts back to the defendant." *Id.*

Here, Plaintiff established its *prima facie* entitlement to foreclose on the property through submission of the subject Note, Mortgage, and the affidavit of Plaintiff's employee, Assistant Secretary Michelle Nicole Ray, who is familiar with the facts of Defendants' Note and Mortgage, and attested to Defendants' default on August 1, 2010. (Affidavit of Michael W. Nardolillo ("Nardolillo Aff."), Note and Mortgage, Exh B, ECF No. 77; Affidavit of Michelle Nicole Ray ("Ray Aff.") ¶¶ 3, 11, ECF No. 80.) Defendants do not directly contest Plaintiff's *prima facie* case, but rather, challenge Plaintiff's standing to bring the foreclosure action as well as call into question whether Plaintiff served a Notice of Default in accordance with the Mortgage. (Def. Mot. 10–13.)

## II. Standing

"Under New York law, '[a] plaintiff establishes its standing in a mortgage foreclosure action by demonstrating that, when the action was commenced, it was either the holder or assignee of the underlying note.'" *E. Sav. Bank, FSB v. Thompson*, 631 F. App'x. 13, 15 (2d Cir. 2015) ("*E. Sav. Bank II*") (quoting *Wells Fargo Bank, N.A. v. Rooney*, 132 A.D.3d 980, 981 (2d Dep't 2015)). "Notably, '[e]ither a written assignment of the underlying note or the physical delivery of the note prior to the commencement of the foreclosure action is sufficient to transfer the obligation, and the mortgage passes with the debt as an inseparable incident.'" *E. Sav. Bank*

6

*II*, 631 F. App'x at 15 (quoting *U.S. Bank, N.A. v. Collymore*, 68 A.D.3d 752, 754 (2d Dep't 2009)). "[W]hile assignment of a promissory note also effectuates assignment of the mortgage, the converse is not true: since a mortgage is merely security for a debt, it cannot exist independently of the debt, and thus, a transfer or assignment of only the mortgage without the debt is a nullity and no interest is acquired by it." *U.S. Bank Nat'l Ass'n v. Dellarmo*, 94 A.D.3d 746, 748 (2d Dep't 2012) (internal citations omitted). To determine whether Plaintiff has standing to foreclose on the Mortgage, the Court must determine whether Plaintiff is the holder of the Note.

Defendants maintain that Plaintiff "has not and cannot demonstrate that it is the owner or holder of the Mortgage and Note when the instant action was commenced on May 27, 2014." (Def. Mot. 10.) Specifically, Defendants argue that Plaintiff's proffered evidence "affirmatively establishes" that they were not in physical possession of the Note when the case was initiated. (*Id.*) Plaintiff, in turn, argues that OneWest established their standing by attaching a copy of the Note to the Complaint and the Certificate of Merit which were filed on the date it commenced the action. (Mem. of Law in Opp. to Def. Cross-Mot. for Summ. J. and in Reply to Def. Opp. to Pl. Mot. for Summ. J. ("Pl. Opp.") 3–4, ECF No. 89.) Plaintiff further argues that it established its standing through the affidavit of an employee who attested that the Plaintiff came into possession of the Note prior to the commencement of the action. (*Id.* at 4.)

Plaintiff established that it has standing to bring this action. "New York courts have repeatedly held that proof of physical possession" through the use of affidavits from Plaintiff's employees "is sufficient on its own to prove a plaintiff's standing to foreclose on the mortgage associated with the note." *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 223 (2d Cir. 2016). Here, Plaintiff offered the Affidavit of Michelle Nicole Ray ("Ray"), who serves as Plaintiff's

7

Assistant Secretary. (Ray Aff. ¶ 1.) Ray attests that Plaintiff is the owner and holder of the Consolidated Note as well as the Consolidation, Extension and Modification Agreement subject to this suit ("Consolidation Agreement"). (*Id.* ¶ 2.) Ray also states that she is familiar with the Consolidated Note, the Consolidation Agreement, and the "books and records kept and maintained by Plaintiff." (*Id.*) Ray is also familiar with the business records maintained by Plaintiff for the purpose of servicing mortgage loans. (*Id.* ¶ 3.) Ray attested that Plaintiff had physical possession of the Note, indorsed in blank, on August 6, 2007, and further affirms that Plaintiff was in possession of the Note prior to, and at, the commencement of this action on May 27, 2014. (*Id.* ¶ 6.)

Consequently, Plaintiff established that they physically possessed the Note, indorsed in blank, when it commenced this suit, and thus, has standing to bring this action. *See Guerrero*, 2016 WL 3453457, at *4 (finding that a sworn statement from Plaintiff's Assistant Secretary noting that Plaintiff was in physical possession of the Note on a date prior to commencement of the suit was sufficient to confer standing to foreclose); *Rooney*, 132 A.D.3d at 982 (finding standing based on an affidavit establishing that Plaintiff had physical possession of the note on a date prior to the commencement of the action); *see Deutsche Bank Natl. Trust Co. v. Barnett*, 88 A.D.3d 636, 638 (2d Dep't 2011) (finding that an affidavit lacking any factual details concerning when the Plaintiff received physical possession of the Note failed to establish that Plaintiff had physical possession of the Note prior to commencement of the suit).[5]

---

[5] The Court is unconvinced by Defendants' other arguments. First, Defendant cites no case law for the proposition that Plaintiff must establish how it came into physical possession of the Note. *See JPMorgan Chase Bank, N.A. v Weinberger*, 142 A.D.3d 643, 645 (2d Dep't 2016) ("There is simply no requirement that an entity in possession of a negotiable instrument that has been endorsed in blank must establish how it came into possession of the instrument in order to be able to enforce it"). Second, Defendants do not point to any relevant evidence in the record substantiating their claim that Plaintiff did not have physical possession of the original Note at the commencement of this action. As previously mentioned, the record indicates that Plaintiff had physical possession of the Note prior to commencement of the action. (Ray Aff. ¶ 6.)

8

### III. Compliance with the Mortgage's Notice of Default Procedure

The parties' next contest whether Plaintiff complied with the procedure set forth in the Mortgage for sending Notices of Default ("Notice"). Section 22 of the Mortgage agreement delineates the conditions under which a Lender may require that a borrower immediately pay the entire amount remaining unpaid under the Note. (Nardolillo Aff., Exh. B., Mortgage ¶ 22.) One such condition is when a borrower defaults on their loan. (*Id.* ¶ 22(a).) If the Lender requests payment in full, Section 22 requires that the Lender send a Notice of Default to the borrower. (*Id.* ¶ 22(b).) Section 15 is a corresponding provision which sets forth some of the procedures for sending a Notice of Default. Under Section 15, a Notice of Default must be given in writing to the borrower. The Notice is considered given "when mailed by first class mail or when actually delivered to [borrower's] notice address if sent by other means." (*Id.* ¶ 15.) In this case, Defendants do not contest the contents of the Notice itself, but rather, argue that Plaintiff has not proffered enough evidence indicating that they sent the Notice of Default in conformance with Section 15 and 22 of the Mortgage. (Def. Mot. 13–14.)

Plaintiff identifies evidence in the record indicating that OneWest sent the Notice of Default to the Defendants. Transmission of a Notice of Default may be demonstrated by an Affidavit that is specific and supported by admissible evidence. "[U]nsubstantiated and conclusory statements in the affidavits of the plaintiff's employees that the required notice of default was sent in accordance with the terms of the mortgage" even when combined with a copy of the notice of default, typically fails "to establish that the required notice was mailed to the defendant by first class mail or actually delivered to [the] notice address if sent by other means, as required by the mortgage agreement." *HSBC Mortg. Corp. (USA) v. Gerber*, 100 A.D.3d 966, 967 (2d Dep't 2012) (citation omitted); *Wells Fargo Bank, N.A. v. Eisler*, 118 A.D.3d 982, 983

9

(2d Dep't 2014). The Affidavit submitted to the Court must be based on the personal knowledge of the affiant, or the knowledge acquired from their review of business records or other documentary evidence kept in the regular course of business. *See Wells Fargo Bank, N.A. Present v. Ghobrial*, 37 Misc.3d 1213(A) (N.Y. Sup. Ct. 2012). Plaintiff may also substantiate their claims by offering copies of the Notice of Default it purportedly sent along with tracking numbers and internal business tracking records detailing the corresponding tracking number and the date of mailing. *See CIT Bank N.A. v. Elliott*, 15-CV-4395 (JS) (ARL), 2018 WL 1701947, at *11 (E.D.N.Y. March 31, 2018); *OneWest Bank, N.A. v. Rosado*, 14 Civ. 9917 (LGS), 2016 WL 3198305, at *4 (S.D.N.Y. June 7, 2016); *Wells Fargo Bank, N.A. v. Pinnock*, 55 Misc.3d 1216(A) (N.Y. Sup. Ct. 2017).

At the outset, Defendants argue that Ray does not have personal knowledge of, or familiarity with, any mailings that may have occurred because she is employed by Plaintiff instead of its servicing division, IndyMac Mortgage Services. "To lay a proper foundation for a business record, a custodian or other qualified witness must testify that the document was 'kept in the course of a regularly conducted business activity and also that it was the regular practice of that business activity to make the [record].'" *United States v. Komasa*, 767 F.3d 151, 156 (2d Cir. 2014) (quoting *United States v. Williams*, 205 F.3d 23, 34 (2d Cir. 2000)). An affiant may attest as to contents of records she reviewed in her official capacity and need not have personal knowledge of the actual creation of the document. *Searles v. First Fortis Life Ins. Co.*, 98 F. Supp. 2d 456, 461–62 (S.D.N.Y. 2000); *see Tradax Energy, Inc. v. Cedar Petrochemicals, Inc.*, 317 F. Supp. 2d 373, 378–79 (S.D.N.Y. 2004).

Here, Ray testified that she is familiar with the business records maintained by Plaintiff and its servicing division, IndyMac Mortgage Services, for the purposes of servicing mortgage

loans. (Ray Aff. ¶¶ 3, 12.) She further attested, based on the personal knowledge she acquired by examining relevant business records of Defendants' loan and Mortgage, that the records she reviewed were made at or near the time of such transactions or events, by or from information provided by persons with knowledge of the transactions or events, and that the records were kept in the regular course of business activity. (*Id.* at ¶ 3.) Thus, Ray has sufficient personal knowledge of the business documents described in her Affidavit. *See Elliott*, 2018 WL 1701947, at *5; *OneWest Bank, N.A. v. Rubio*, No. 14–CV–3800 (CS), 2015 WL 5037111, at *3 n.6 (S.D.N.Y. Aug. 26, 2015).

Next, and contrary to Defendants' position, Plaintiff offers evidence demonstrating as a matter of law that Plaintiff sent Defendants a Notice of Default 30 days before Plaintiff demanded immediate payment of the Note in full. Ray attests that on or about May 25, 2012, OneWest mailed Notices of Default through its servicing division, IndyMac Mortgage Services, to the Borrowers via first-class and certified mail. (Ray Aff. ¶ 12.) Attached to the Plaintiff's submissions are copies of the Notices of Default purportedly sent to Defendants through first-class and certified mail. (*See* Nardolillo Aff., Exh. D.)

The Ray Affidavit also calls this Court's attention to the Plaintiff's attached "Transactions Report." (Ray Aff. ¶ 19.) The Transactions Report is a table containing notes on transactions which are produced at or near the time of the transactions represented therein. (*See id.* ¶¶ 3, 17–18.) Ray attested that it is the regular custom and practice of Plaintiff to make notations on the Transactions Report for each loan file at the time that a Notice of Default is generated and served. (Ray Aff. ¶ 18.) The Transactions Report indicates the article number, the reference number, the record indicator, the United States Postal Service ("USPS") type of mailing, the name and address of the intended recipient, the date mailed, the status of the

package's delivery, and the USPS postage fee. (*See* Nardolillo Aff., Exh. G.) Ray proffers that transaction number five and seven on the Transactions Report represent the Notices of Default that were sent to Defendants by first-class mail. (Ray Aff. ¶ 19.) The Article Number, name, and addresses on the Transaction Report match the tracking number, name, and addresses listed on the Notice of Defaults provided to the Court. (*Compare* Nardolillo Aff., Exh. G, transaction numbers five and seven *with* Exh. D., at 96, 99.)[6]

Accordingly, there is no issue of material fact as to whether Plaintiff mailed the Notice of Default. The combined evidence of the Ray Affidavit, the Transactions Report, the tracking numbers, names, addresses and the attached Notices of the Defaults is sufficient to create a presumption that the Notices were mailed. *See Rosado*, 2016 WL 3198305, at *4; *Pinnock*, 55 Misc.3d 1216(A). Defendants' conclusory denial of receiving the Notice of Default does not, without more, create a triable issue of fact. *Countrywide Home Loans, Inc. v. Brown*, 305 A.D.2d 626, 627 (2d Dep't 2003) ("The appellant's simple denial of receipt was insufficient to rebut this presumption of delivery"). Therefore, Plaintiff has demonstrated, and Defendants have failed to refute, that there is no issue of material fact as to whether Plaintiff mailed the Notice of Default in conformance with the Mortgage as a matter of law.

## IV. Compliance with RPAPL § 1304

Plaintiff also moves to strike Defendants' third affirmative defense which alleges that Plaintiff did not comply with the 90-day Notice requirement of RPAPL § 1304. Defendants did not address this defense in their motion papers. Although Federal Courts may generally "deem a claim abandoned" when a party fails to respond to the other party's arguments "that the claim should be dismissed," *Lipton v. County of Orange, N.Y.*, 315 F. Supp. 2d 434, 446 (S.D.N.Y.

---

[6] Page numbers for the Transactions Report refers to the ECF pagination of Docket Entry Number 77.

2004), given that this Court has previously denied summary judgment on this very issue, and that Defendants deny receipt of any Notices of Default, (*See e.g.*, Decl. of Quenten E. Gilliam, Exh. A, Aff. of Def. Veronica Guerrero ¶ 3, ECF No. 84), this Court briefly addresses whether Plaintiff has proffered adequate evidence of compliance. *See Elliott*, 2018 WL 1701947, at *10–11 (addressing Defendants' affirmative defense of non-compliance with RPAPL § 1304 despite not being raised in Defendant's Opposition papers).

RPAPL § 1304 requires a lender, assignee, or mortgage loan servicer to transmit a notice to the borrower at least 90 days prior to commencing a legal action for mortgage foreclosure. N.Y. Real Prop. Acts. Law § 1304. The statute sets forth the following requirements for the notice: (1) text in at least fourteen-point type; (2) text stating "YOU COULD LOSE YOUR HOME. PLEASE READ THE FOLLOWING NOTICE CAREFULLY"; (3) information regarding government-approved housing counseling agencies available to assist borrowers in seeking home loan modifications; and (4) transmission of the notice via registered or certified mail and also by first-class mail to the last known address of the borrower, and if different, the residence subject to the mortgage. *Id.* "'[P]roper service of RPAPL 1304 notice on the borrower or borrowers is a condition precedent to the commencement of a foreclosure action . . .' " *Ullah*, 2015 WL 3735230, at *8 (quoting *Aurora Loan Servs., LLC v. Weisblum*, 85 A.D.3d 95, 106 (2d Dep't 2011)). "The plaintiff has the burden of establishing that it satisfied this condition." *Ullah*, 2015 WL 3735230, at *8 (citation omitted).[7]

"New York courts have held that [i]n order to trigger the presumption of mailing, the lender under RPAPL 1304 must provide a sworn statement that the particular document—the statutory notice—was mailed by a particular person, or that a particular process, which resulted

---

[7] The copies of the 90-day Notices purportedly sent to Defendants, and provided to this Court, comply with the textual and informational requirements of § 1304. (*See* Nardolillo Aff., Exh. E.)

13

in mailing, was uniformly and diligently followed." *Id.* (quotations and citation omitted). Plaintiff attempts to fulfill the latter approach. (Pl. Mot. 10–11.)

Courts have found that the coupling of an affidavit and a supporting record can create a presumption of mailing a 90-day Notice. In *Ullah*, for example, the Court found that an Affidavit by Plaintiff's employee describing the manner in which their computer system generates a copy of a 90-day Notice when it is mailed, that it is then archived in the computer system and that a notation is made in the corresponding file, coupled with a record indicating that the process described in the affidavit was followed, was sufficient to create a presumption that a 90-day Notice was sent in conformance with RPAPL § 1304. *Ullah*, 2015 WL 3735230, at * 9. Similarly, in *Wells Fargo Bank, N.A. v. Yapkowitz*, 033182/2013, 2018 WL 2326174, at *7 (N.Y. Sup. Ct. May 21, 2018), an Affidavit in which the affiant attested to having personal knowledge of Plaintiff's records and that the 90-day Notice was sent to Defendants in accordance with the established and routinely followed business practices and procedures, coupled with a copy and explanation of the Walz TrackRight Transaction Detail for the mailings, demonstrated that the mailings occurred as a matter of law. Again in *Citimortgage, Inc., v. Espinal*, 134 A.D.3d 876, 878 (2d Dep't 2015), an Affidavit from Plaintiff's employee describing that the standard business procedure regarding all 90-day notices was to enter mailing information into the "correspondence log," along with documentation of the United States Postal Service tracking number for the Notice and a copy of the correspondence log was sufficient to create a presumption of mailing.

Defendants' third affirmative defense must be dismissed because Plaintiff has proffered sufficient evidence to create a presumption of having mailed the 90-day Notice of Default in conformance with RPAPL § 1304. In its effort to demonstrate "that a particular process, which

14

resulted in mailing, was uniformly and diligently followed," *Ullah*, 2015 WL 3735230, at *9, Plaintiff offers the Ray Affidavit and supporting business records. Ray states that as a result of the regular performance of her job, she is familiar with the business records maintained by Plaintiff and its servicing division, IndyMac Mortgage Services, for the purposes of servicing mortgage loans. (Ray Aff. ¶¶ 3, 13.) She stated that the records she reviewed were made at or near the time of such transactions or events, by or from information provided by persons with knowledge of the transactions or events, and are kept in the regular course of business activity. (*Id.* at ¶ 3.) These records indicate that on or about October 29, 2013, Plaintiff mailed the 90-day Notice to Defendants through its servicing division, IndyMac Mortgage Services, via first-class and certified mail. (Ray Aff. ¶ 13.) Attached to Plaintiff's motion papers are copies of the 90-day Notices purportedly sent to Defendants through first-class and certified mail along with their corresponding tracking numbers. (*See* Exh. D.)

Ray affirms that the 90-day Notice is a type of record that is generated and maintained by Plaintiff in the regular and ordinary course of business, that it is the regular custom and practice of Plaintiff to retain the notices, that the notices are generated through their "system" and the content of the notices are archived in the system. (Ray Aff. ¶¶ 15–16.) Further, Ray states that it is the regular custom and practice of Plaintiff to upload and save the notices "contemporaneously with the mailing of the notices." (*Id.* ¶ 17.) Most notably, Ray describes the process by which Plaintiff tracks the mailing of their 90-day Notices. She explains that in addition to uploading and saving the notices, it is also the regular custom and practice of Plaintiff to notate the loan transaction and activity notes for reach loan file in its computer system at the time that the 90-day Notice is generated and served. (*Id.* at ¶ 18.)

As support for the proposition that Plaintiff diligently followed that particular process, the Ray Affidavit again calls this Court's attention to the aforementioned Transactions Report. (*Id.* ¶ 20.) The Ray Affidavit proffers that transactions number twenty-two and twenty-four on the Transactions Report represent the 90-day Notices that were sent to Defendants via first-class mail, and that items twenty-one and twenty-three represent the Notices sent by certified mail. (Ray Aff. ¶ 20.) The Article Number, name, and addresses on the Transaction Report match the tracking number, name, and addresses listed on the 90-day Notices provided to the Court. (*Compare* Exh. G, transaction number twenty-two and twenty-four *with* Exh. E., at 118, 126.) Accordingly, because the notations were made detailing that the 90-day Notices were mailed via first-class and certified mail in accordance with Plaintiff's particular process, the evidence creates a rebuttable presumption that such a mailing occurred.

The Ray Affidavit and the supporting record of admissible evidence indicates that a particular process, which resulted in mailing, was uniformly and diligently followed. The combined evidence of the matching tracking numbers, names, addresses and the attached Notices of Default, along with the Ray Affidavit is sufficient to establish a presumption that the 90-day Notices were mailed. This evidence, coupled with Defendants' mere denial of receipt of the Notice, does not create an issue of material fact concerning the question of whether the Notices of Default were sent to Defendants. *Ullah*, 2015 WL 3735230, at *9. Accordingly, this Affirmative Defense must be dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is GRANTED and Defendants' Cross-Motion for Summary Judgment is DENIED. Plaintiff's request for Default Judgment as to Defendants JP Morgan Chase Bank, N.A., and Angela M. Conde is DENIED without prejudice for failure to follow my Individual Rules of Practice in Civil Cases. (*See* Section 3.J. and Attachment A.) Additionally, Plaintiff is directed to submit a proposed judgment for the sale of the subject property by June 13, 2018.

The Clerk of Court is respectfully requested to terminate the motions at ECF Nos. 76 & 84. The Clerk of Court is further requested to: (1) amend the case caption by replacing Plaintiff's name "OneWest Bank, N.A." with "CIT Bank, N.A., *formerly known as* OneWest Bank, N.A."; and (2) dismiss the action against Defendant "John Doe" without prejudice.

Dated: June 6, 2018
White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge